This litigation has already been before this court twice. InEx parte Miles (In re: Bank of Heflin v. Miles), 294 Ala. 462,318 So.2d 697 (1975) this court granted writ of mandamus directing that the stockholders-petitioners be allowed to examine and audit "all books and records" of the Bank. In the second case, Miles v. Bank of Heflin, 295 Ala. 286,328 So.2d 281 (1975), this court held that the trial court erred in granting the Bank's motion for summary judgment and dismissing the stockholders' counterclaim seeking the 10% statutory penalty provided for in Title 10, § 21 (46) Code.
Pursuant to this court's ruling in Ex parte Miles, supra, accountants for the stockholders began an examination of the books and records of the Bank on September 29, 1975. The accountants were in the Bank for four 5-hour days, the Bank's working hours, on September 29 and 30 and October 2 and 3. During the course of these 4 days, it was discovered that expense checks covering an 18-month period were missing. Bank officers subsequently testified that although they knew that there were "any number" of books and records that the accountants had not had an opportunity to see on Friday, October 3, the directors of the Bank held a meeting on Saturday, October 4, and unanimously voted not to permit any further inspection of the records of the Bank. It is the Bank's position that the stockholders, by letter from their attorney to the Bank's attorney, had agreed to limit the inspection to the work week beginning Monday, September 29. The record will not support this argument. The letter at most was an estimate by the attorney of the length of time he expected the inspection to take. When the accountants reappeared at the Bank on the following Monday, October 6, 1975, they were not allowed to continue the examination. It is uncontroverted that the examination did not continue on that day, although the officers of the Bank conceded that the examination ordered by this court in Ex parte Miles, supra, had not been completed.
The stockholders then filed a motion with the trial court to "elaborate their rights of examination" and to require certain Bank officials to show cause why they should not be held in contempt for failing to comply with the trial court's first order. The record before us begins with the hearing on this motion, which culminated in the trial court orally granting the stockholders twelve hours' additional time to make the inspection. Officers of the Bank testified at this hearing that, although the expense checks had been destroyed, they were readily available on microfilm and could be easily found, because they were filmed in numerical sequence at the beginning of each day's activities.
Pursuant to the order granting additional time, the accountants returned to the Bank to continue the inspection. This second examination revealed that, contrary to what officers of the Bank had stated, the missing expense checks were not serially filmed at the beginning of each day's filming but were filed at random, interspersed with customer's checks. Some 1,000 of the missing checks were not filmed at all. The absence of the checks and no microfilm copies thereof being available required a cumbersome, time-consuming effort to verify payments represented by such checks. In short, the accountants could not finish the inspection within the time allotted.
During the course of the second examination, the stockholders' examiners were not allowed to see an independent audit of the Bank previously made by Seidman Seidman, although the Bank's president had testified at the hearing that it would be available; they were refused "aging reports" which are lists of past due loans showing how long each has been past due; and they have not been allowed to see the Bank's loan portfolio including information as to how such loans are collateralized.
When the time allowed by the court for the second examination expired without a full inspection of the records, the stockholders filed a motion with the trial court for reconsideration and rescission of its earlier order. While this motion was pending, the *Page 1074 
decision of this court in Miles v. Bank of Heflin, supra, was announced. The stockholders then broadened their motion to claim the statutory penalty and also sought attorneys' fees. It was contended in that motion that the trial court had unreasonably limited the time in which the stockholders were allowed to inspect the Bank's records. After hearing on this motion, the trial court entered an order holding that the stockholders had had ample time to inspect the Bank's records "in that they have had seven days for inspection which, as the Court understands after talking to a Federal Bank Examiner, is almost twice the time they would take to examine a similar bank." The trial court also noted in its order that the ". . . purpose of the examination is mere idle curiosity." The court allowed the statutory penalty mandated in Miles v. Bank ofHeflin, supra, and denied any attorney's fee holding that the ". . . Supreme Court's order of March 5, 1976 [i.e., the decision in Miles v. Bank of Heflin], is res judicata with regard to such claims for attorneys' fees." Curiously, after finding that the purpose of the examination was "mere idle curiosity," the court allowed 8 additional hours for the stockholders to complete the inspection of the books and records of the Bank.
Both sides complain about this order on appeal. The stockholders contend they have been denied adequate time for inspection of records of the Bank to which they are entitled. The Bank appeals from the award of the penalty.
It is the Bank's contention, and the trial court evidently agreed, that the stockholders have been given ample time to complete an inspection of any records to which they are entitled. This court has previously held that the statutory right of inspection must be exercised at reasonable and proper times. Smith v. Flynn, 275 Ala. 392, 155 So.2d 497 (1963). For obvious reasons, no precise time has been judicially determined as a reasonable time. What constitutes a reasonable time is a matter to be decided under the facts of each case. A stockholder has a right to inspect the books and records of his company. The corporation has a concurrent right to carry on its business. These two rights must be accommodated. Smith v.Trumbull Farmers Gin Co., 89 S.W.2d 829 (Tex.Civ.App. 1936). The time necessary to make a thorough inspection of a corporation's books and records is directly dependent upon the accessibility of those records to the stockholder. The corporation can either make those records readily accessible, thereby reducing the time required for a complete inspection, or it can make it difficult for the stockholder to ferret out the information. The difficulty may result from the manner in which the corporate records are kept or from other reasons. It may be inconvenient for the corporation to make its records available, but the stockholder has a right to inspect them; and, although he does not have a legal right to unduly interfere with the conduct of the corporation's business, his right to inspect cannot be denied merely because it causes an inconvenience to the corporation. State ex rel. Spinney v.Sportsman's Park Club Ass'n, 29 Mo.App. 326 (1888). This is especially true where that inconvenience is the result of actions by the corporation itself or the result of circumstances for which neither party is at fault.
It is uncontroverted that the stockholders in this case, since their initial demand in late 1974, have been denied access to the accounts receivable "aging reports," to the audit made by Seidman Seidman, independent auditors, and have been unable to locate missing expense checks covering some 18 months. Minutes of meetings of the Board of Directors were withheld until the final day of the inspection period allowed by the trial court.
We have read the entire record in the case before us. The reason for the failure to allow a full inspection as ordered by this court in Ex parte Miles, supra, is expressed in various ways. At page 150 of the record, the Bank's attorney, referring to the decision of this court, said:
 ". . . but the point is here the Supreme Court order . . . it is confusing *Page 1075 
and a person can't tell what to comply with or not."
If the mandate of Ex parte Miles, supra, is confusing to the Bank, we are unable to make it any clearer. It ordered the trial court ". . . to enter an order allowing examination and audit of all books and records of the Bank . . ." (294 Ala. at 466, 318 So.2d at 700).
These stockholders have invested their money to the capital of this Bank. They have a clear legal right to inspect the books and records of that Bank to determine whether its affairs are being conducted in a proper manner.
In addition to its assertion that it cannot understand what the holding in Ex parte Miles, supra, required it to produce for inspection, the Bank also seems to think it is no longer necessary for it to abide by the holding in that case.
After the opinion in Ex parte Miles was announced, the Alabama Bankers Association had sponsored a bill in the legislature to limit the right of inspection by stockholders of banks. The bill became law, and although not before us, and we have not been invited to construe it, it is apparent from the record that Bank officers believed it relieved the Bank of the obligation to allow these stockholders the full inspection ordered in Ex parte Miles. The record shows the following:
 "Q Now, Mr. Payne [President of the Bank], Mr. Klein [stockholders' accountant] testified that you refused to allow him to see certain records of the bank on his last visit to the bank because you took the position that the provision of the Statute of Alabama under which he was examining the records had been changed and that prevented him from seeing those records. Did you take that position with him?
"A Yes, I did.
 "Q What records was it that you refused to allow Mr. Klein to see on the basis that this statute adopted at [sic, after] the Supreme Court decision barred him from seeing them?
 "A The only records he asked to see, if I recall correctly, that he was refused was the loans and financial statements of customers, bank directors, officers and employees.
". . .
 "Q Weren't you advised at the time that the demand was made that the purpose was to ascertain whether there was evidence of any action taken not in accordance with the best interests of the shareholders of the corporation, particularly but not limited to misuse of corporate funds, misuse of corporate assets, diversion of corporate assets to personal benefit of directors, misappropriation or misapplication of corporate assets, or favoring of customers who have personal connection with officers or directors of the corporation? Were you told that?
"A Yes.
". . .
 "Q Now, going to the Sidman and Sidman [sic, Seidman and Seidman] report, I take it from Mr. Casey's question that you don't have any objection to our seeing the Sidman and Sidman [sic, Seidman and Seidman] report; is that right?
 "A I have an objection to you seeing the Sidman and Sidman [sic, Seidman and Seidman] report. That deals with confidentiality of customers' records.
 "Q Let me see if I understand that properly. You are taking the position, despite the order of the Supreme Court of Alabama, that you object to our seeing any portion of the Sidman and Sidman [sic, Seidman and Seidman] report relating to what you have phrased as confidential customer relations; is that right?
"A Yes.
"Q What do you include in that?
"A Any mention of names and amounts of the customers. *Page 1076 
"Q Names?
 "A Such as a certain customer has a certain overdraft, such and such loan is past due in the amount of such and such."
Mr. Payne gave the same reason for refusing the stockholders access to the "aging reports," i.e., that such reports revealed the "names and amounts of people who are past due."
From the foregoing, it is apparent that the stockholders have been denied access to records which this court has held they are entitled. It is also apparent that the Bank's president, at least, believes the Bank is no longer required to abide by this court's decision. Although, in brief, the Bank's attorney does not seem to rest his argument on the passage of the act which followed Ex parte Miles, he does say that the vote of the legislature for passage was "almost unanimous." We do not address ourselves to the effect of the act passed by the legislature. The trial court has not done so, and its application or validity on the present record is not before us.
Because the evidence is uncontradicted that the stockholders have not yet been allowed the full inspection ordered by this court in Ex parte Miles, supra, the order of the trial court limiting that right is reversed. They are entitled to that inspection and should not be limited to a precise, preset time limitation. Although the inspection should not unreasonably interfere with the conduct of the Bank's business, the time required to complete it is secondary to the right to do so.
We turn now to the other aspect of the stockholders' appeal. It has long been held by this court that there is no inherent right to have an award of attorneys' fees in the absence of contract, statute, or a recognized ground of equity. Low v.Low, 255 Ala. 536, 52 So.2d 218 (1951); Johnson v. Gerald,216 Ala. 581, 113 So. 447 (1927). Among the recognized grounds in equity for awarding attorneys' fees is the furtherance of intracorporate litigation by stockholders to the benefit of the corporation. Blythe v. Enslen, 219 Ala. 638, 123 So. 71 (1929);Decatur Mineral Land Co. v. Palm, 113 Ala. 531, 21 So. 315
(1896).
The stockholders argue that they have bestowed a benefit upon the corporation by compelling it, after unusual effort, to comply with the statute and by forcing a clear and decisive settlement of the stockholders' rights of inspection. In support of this argument, several cases are cited which deal with the award of attorneys' fees to stockholders in situations where the benefit to the corporation has been questioned. The leading case on this point is Mills v. Electric Auto-LiteCompany, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).
In Mills, minority stockholders alleged that a proxy statement sent out by management to solicit votes in favor of a merger was misleading. The District Court ruled, as a matter of law, that the claimed defect in the proxy statement was a material omission and granted an interlocutory judgment on the issue of liability, referring the case to a master for consideration of appropriate relief. On an interlocutory appeal to the Federal Seventh Circuit, that court affirmed the trial court's conclusion that the proxy statement was materially deficient, but reversed on the issue of whether the material omission had a causal relation to the outcome of the vote on the merger.
The United States Supreme Court granted certiorari and reversed, holding the minority stockholders had established their cause of action and the Seventh Circuit should have affirmed the partial judgment on the issue of liability. The case was remanded for the determination and award of appropriate relief. That court also ruled that the stockholders were entitled to an interim award of litigation expenses and reasonable attorneys' fees for having established a violation of the securities laws by their corporation and its officials, it being unnecessary to show a pecuniary benefit to their corporation or to their fellow stockholders.
The stockholders also cite Bosch v. Meeker Cooperative Light Power Ass'n, 257 Minn. 362, 101 N.W.2d 423 (1960), in support *Page 1077 
of the proposition that the benefit to the corporation and the other shareholders need not be capable of being measured in monetary terms to justify an award of attorneys' fees. InBosch, the Minnesota Supreme Court allowed the reimbursement of a stockholder for his expenses in obtaining a judicial declaration that the election of certain corporate directors was invalid. The court stated its interpretation of a substantial benefit as follows:
 ". . . [A] substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudiced to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." (257 Minn. at 366, 367, 101 N.W.2d at 427.)
We agree with the holdings in Mills and Bosch that a pecuniary benefit is not essential to justify, under equitable principles, the award of attorneys' fees. We are aware of the tenacity of the stockholders in the instant case in asserting their rights. But, we are not prepared to state at this stage, where the inspection has not been completed, that their efforts have bestowed a benefit on the corporation and thereby the other stockholders. Their efforts to inspect the records, which every stockholder has, have been Herculean. To the extent that it is unlikely that other stockholders will meet with the same resistance faced by these, other stockholders have, in a sense, benefited from their efforts.
Although the stockholders before this court have established a violation of their statutory right to inspect the books and records of their corporation, on remand of Miles v. Bank ofHeflin, supra, the trial court awarded those stockholders a penalty in excess of $34,000. But as yet, they have not established that their corporation and its officials are in violation of other duties to the stockholders. Because the penalty in this case has sufficiently reimbursed these stockholders for expenses thus far incurred in their efforts to inspect the Bank's records, we think it premature to award additional reimbursement at this time. If a full inspection discloses no evidence of mismanagement or misuse of funds, or other conduct for which management would be answerable, it would not be proper to require reimbursement to the stockholders of attorneys' fees, notwithstanding the unusual lengths to which these stockholders have had to go to exercise a legal right. Of course, if the Bank continues to deny a full and complete inspection, requiring the stockholders to continue to incur litigation expense, it may well be equitable to require the Bank to reimburse them for such further recalcitrance by the Bank to follow the explicit orders of this court may well constitute contemptuous conduct.
For this reason, we affirm the trial court's order denying attorneys' fees. We do not, however, suggest by this holding that the stockholders may not ultimately be entitled to attorneys' fees upon establishing a substantial benefit to the corporation, pecuniary or otherwise.
The Bank appealed from the order of the trial court granting the stockholders the statutory penalty under the mandate ofMiles v. Bank of Heflin, supra. It candidly admits that the arguments advanced for reversal of that case are the same as those made in application for rehearing on original deliverance of that opinion. Those arguments were carefully considered at that time and have been reconsidered here. The court declines to overrule its opinion in that case.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur. *Page 1078