Fayette R. BARTON, on behalf of himself and all other stockholders of Alabama By-Products Corporation, Inc., Plaintiff-Appellant,

v.

DRUMMOND COMPANY, a corporation, et al., Defendants-Appellees.

No. 78–2963.

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 9, 1981.

Gilbert E. Johnston, Sr., Alan W. Heldman, Howard P. Walthall, Birmingham, Ala., for plaintiff-appellant.

Thomas, Taliaferro, Forman, Burr & Murray, Robert G. Tate, Birmingham, Ala., Richard C. Seltzer, Jay Wishingrad, New York City, for defendants-appellees.

Before MORGAN, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This case comes to us from a district court order and memorandum of decision dismissing plaintiff's motion for the award of attorney's fees on the ground that plaintiff had failed to establish an exception to the "American Rule" which prohibits the award of attorneys' fees in the absence of a specific statutory or contractual provision. We find that the district court erred in dismissing appellant's suit for attorneys' fees without having first conducted an evidentiary hearing. We therefore remand for an evidentiary hearing to determine the facts relating to the following questions:

(1) Whether under Delaware law the proposed merger would have constituted a breach of fiduciary duty owed to minority shareholders in the context of a freeze-out merger?

(2) Whether the fact that no interest rate was assigned to the debentures makes it impossible to answer the first question?

(3) Whether the abandonment of the proposed merger fell within the "common benefit" exception for the award of attorneys' fees?

(4) To what extent plaintiff's lawsuit caused Drummond to abandon the proposed merger, and to what extent the abandonment was caused by other factors?

(5) Whether attorneys' fees may be assessed against the corporation, Alabama By-Products, or alternatively, against Drummond, or both?

This diversity action for injunctive relief was filed in the Northern District of Alabama on March 13, 1978. Plaintiff, a citizen of Texas, sued the corporate defendants Drummond Company, Inc., Drummond Investment Company, Inc. and Alabama By-Products Corporation, Inc., all three incorporated in Delaware and principally located in Alabama. Plaintiff, Fayette R. Barton, sued on behalf of himself and other similarly situated stockholders of Alabama By-Products (hereinafter "ABC"), seeking to enjoin a proposed merger which would have made ABC a wholly-owned Drummond subsidiary and which would have eliminated an entire class of common stock.

ABC is a publicly-owned corporation with two classes of common stock. Class A stock is comprised of 757,300 shares, and Class B stock is comprised of 1,000,000 shares. The sole difference between the two classes of stock is that only Class A shareholders have voting rights. In a series of transactions, privately owned Drummond gained numerical control of the Class A voting stock of ABC by purchasing 65.7% of the outstanding ABC Class A shares. Thus, while Drummond became owner of only 39% of ABC's outstanding equity, the voting rights obtained thereby gave Drummond effective control of the entire ABC Corporation.

Exercising this minority control, Drummond reorganized ABC's Board of Directors and elected several Drummond-nominated directors to the Board, leaving only one former ABC director. Shortly after his appointment to a Board committee organized to review the "fairness" of the proposed merger, this remaining "outside" director resigned from the Board.

On February 16, 1978, Drummond filed a Form S-14 registration statement with the Securities and Exchange Commission pursuant to the 1933 Securities Act. The S-14 contained a preliminary prospectus and stated that the ABC Class B shareholders would be required to exchange their stock for Drummond subordinated debentures which were to be unsecured, junior to other debt, payable out of income, and with no readily ascertainable market value.

In response to the proposed merger, plaintiff brought this shareholders' suit alleging that the merger was intrinsically unfair and in violation of a fiduciary duty owed by Drummond to the ABC shareholders. Along with the bill of complaint and motion for preliminary injunction, plaintiff also filed a motion seeking to have an accelerated schedule for answer, discovery, and trial. On March 22, 1978, the district court granted the accelerated time schedule, and shortly thereafter plaintiff filed a series of requests for admissions, and interrogatories.

Pursuant to this court-ordered schedule, defendants were due to produce on Monday, March 27, 1978, three weeks before trial, a series of documents, including a comment letter of the Securities and Exchange Commission reviewing the proposed transaction, and an investment banking firm's report concerning the "fairness" of the proposed transaction. Defendants never produced these documents, however, because on the same day on which defendants were required to comply with discovery, Drummond issued a press release announcing that it had "decided not to go forward with the proposed merger transaction pursuant to which it would have acquired the shares of Alabama By-Products Corporation . . . in exchange for Drummond subordinated income debentures."

On April 3, 1978, defendants filed a motion to dismiss the action as moot. Plaintiffs filed a motion seeking attorneys' fees shortly thereafter. Additionally, plaintiffs continued to seek discovery in accordance with the accelerated schedule, but the court refused to grant the motion to compel, directing instead that plaintiff make a stockholder "demand" for examination of the corporate documents. Plaintiff proceeded with the stockholder's demand but was again unsuccessful.

Finally, on June 8, 1978, the district court issued a memorandum and decision in which it dismissed plaintiff's suit without prejudice, holding that the issues embodied in the complaint were moot. Additionally, the court denied plaintiff's motion for attorneys' fees, and from this denial, plaintiff now appeals.

On appeal we are faced with a number of problems. Paramount among them is the fact that there is little evidence in the record by way of affidavits or expert testimony to aid the court in considering the substantive issues of the case. Had discovery been more fully completed, we might be in a better position to determine whether the proposed merger would have violated a fiduciary duty owed to appellants. In light of the record, however, we must remand to the district court to conduct an evidentiary hearing.

The plaintiff below argued that the proposed merger would have violated a fiduciary duty which is owed to minority shareholders in the context of a freeze-out merger. Both parties have agreed at oral argument on appeal that Delaware law governs this substantive issue, and we turn, accordingly, to Delaware law in an effort to determine whether the proposed merger would have amounted to a violation of the controlling shareholders' fiduciary duty.

In *Singer v. Magnavox*, 380 A.2d 969 (Del.1977), the Supreme Court of Delaware first held that majority shareholders of a corporation owed a fiduciary duty to minority shareholders during a freeze-out merger. The plaintiffs, who owned common stock in Magnavox at the time of the merger, had brought a class action suit on behalf of themselves and others who held life shares, in an effort to nullify the merger. Plaintiffs argue that the acquiring corporation and the majority shareholders had dealt "unfairly" by offering a cash price per share to the minority which was "grossly inadequate." Despite the fact that the defendants had fully complied with the merger requirements of 8 Del.Code § 251, the court found that statutory compliance did not automatically validate the merger. Rather, the court found that in situations where the majority shareholders stood "on both sides of the transaction," the dominant corporation, as a majority stockholder, had "'the burden of establishing its entire fairness' to the minority stockholders, sufficiently to 'pass the test of careful scrutiny by the courts.'" *Singer v. Magnavox, supra*, at 976, *quoting from Sterling v. Mayflower Hotel Corp.*, 33 Del.Ch. 293, 93 A.2d 107, 109–10 (1952).

■ Because the record does not contain facts sufficient to establish whether the Drummond merger would have violated the *Singer* standard, we remand the case to the trial court to conduct an evidentiary hearing. In so doing we note particularly that Drummond stood on "both sides" of the proposed merger, and as such should be held to the same standards of fiduciary responsi-

bility in its dealings with ABC as was Singer, above.

At oral argument appellees first argued to this court that *Tanzer v. International General Industries*, 402 A.2d 382 (Del.Ch. 1979), should control the issue of breach of fiduciary duty. In *Tanzer*, plaintiff stockholders brought suit against the defendant corporation in order to enjoin a merger the sole purpose of which, according to plaintiff, was to serve the interest of the acquiring parent corporation. The court ultimately found that the transaction was "intrinsically fair" to the minority stockholders. Although *Tanzer* was brought to this court's attention on the issue of breach of fiduciary duty, we find that the case is especially useful in its discussion of the burden of proof:

> In the scrutiny of a corporate transaction by a court to determine if it is entirely fair to the minority stockholders, the threshold question is: Where does the burden of proof lie?

> If the merger had not been ratified by a majority of the minority stockholders, there would be no question that the burden of proving intrinsic fairness would fall upon . . . the dominant stockholders who stood on both sides of the transaction and caused the merger to take place.

*Tanzer, supra* at 386. Because the ABC shareholders never ratified the proposed Drummond merger, the burden of proving the intrinsic fairness of the transaction very clearly falls upon the defendants.

We have addressed the alleged breach of fiduciary duty at the outset because appellants can obtain relief only upon a threshold finding that Drummond's proposed merger would have violated a duty to the ABC shareholders. Appellees argue, however, that their conduct did not amount to a breach of fiduciary duty because the merger was never "finalized" and because a "crucial" interest rate was never assigned to the debentures. Although the record on appeal does not contain sufficient facts to determine whether the proposed merger would have constituted a breach of fiduciary duty, we do not find that consideration

of the interest rate ends the matter. An interest rate represents only one of several factors which might be considered in determining whether the proposed merger was detrimental to the Class B shareholders of ABC. Rather than concluding in the absence of such an interest rate, that the merger did not violate a fiduciary duty, we find it appropriate to remand to the trial court in order to conduct an evidentiary hearing whereby pertinent documents, including the Bache-Halsey report and the SEC comment letter, can be introduced into the record, along with other relevant documents, affidavits, and deposition evidence which the parties may wish to introduce. To mention just one example, expert testimony, such as that of appellant's witness, Mr. Abe Berkowitz, might be especially relevant to the inquiry.

■ The third issue which we address on appeal is whether the abandonment of the proposed merger fell within the "common benefit" exception for the award of attorneys' fees. While the so-called "American Rule" prohibits the award of attorneys' fees in the absence of a specific statutory or contractual provision, it is well settled that the "common benefit" or "common fund" equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts. As the Supreme Court recently acknowledged in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980), "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

In *Sierra Club v. Lynn*, 502 F.2d 43 (5th Cir. 1974), our court similarly acknowledged that attorney's fees are awardable under the "common benefit" exception. In *Lynn* the plaintiffs had been awarded $20,000 in attorneys' fees by the district court despite the fact that neither of the two statutes under which the plaintiffs sued, NEPA and Title VII of the 1964 Civil Rights Act, specifically provided for such recovery. Al-

though this court reversed the award on appeal on other grounds, the circuit nevertheless acknowledged the legitimacy of the "common benefit" exception. Quoting an earlier Supreme Court decision, this court stated:

> The "American Rule" has not served, however, as an absolute bar to the shifting of attorneys' fees even in the absence of statute or contract . . . We have long recognized that attorneys' fees may be awarded to a successful party . . . where a successful litigant has conferred a substantial benefit on a class of persons and the courts' shifting of fees operates to spread the cost proportionately among the members of the benefited class.

*Id.*, 502 F.2d at 64, *quoting F. D. Rich Co., Inc. v. United States, Industrial Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974).

Defendant-appellees have argued on appeal that the facts below do not fall within the "common benefit" exception set out in *Lynn, supra.* Specifically, appellees argue that the trial court was correct in concluding that attorneys' fees could not be awarded because of the "absence of a determination that a benefit has been conferred on Alabama By-Products Corporation or any of its shareholders."

■ With regard to the cases cited above, appellees attempt to distinguish the instant case on the ground that those cases involved lawsuits which created readily ascertainable monetary funds, with obvious benefit to the litigants. Turning to appellee's argument, we note that under both Delaware and Alabama law the courts have recognized that nonpecuniary benefits are within the scope of the exception. In *Mencher v. Sachs*, 39 Del.Ch. 366, 164 A.2d 320 (1960), the Delaware Supreme Court was faced with a situation where the "benefit" conferred upon the corporation as a result of a shareholder's derivative suit took the form of cancellation of illegally issued stock. In rejecting the appellants' argument that the common benefit exception should not apply, the court stated:

> Cancellation of illegally issued stock is in itself a benefit. Although the benefit may be difficult of evaluation in dollars and cents, it is still a benefit.

*Mencher, supra*, 164 A.2d at 323.

Similarly, in *Miles v. Bank of Heflin*, 349 So.2d 1072 (Ala.1977), the Alabama Supreme Court adopted the position of *Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), in which the U.S. Supreme Court had held that stockholders were entitled to attorneys' fees for having established a violation of the securities laws by their corporation, it being unnecessary to show a pecuniary benefit to their corporation or fellow stockholders. The Alabama court in *Miles* held that the litigants should be entitled to an award of attorney's fees upon proof that the corporation's directors had mismanaged funds. The court further concluded that the plaintiffs' efforts to enforce a shareholder right to inspect the corporation's records was itself a "benefit" which could justify an award of attorneys' fees. Therefore, under the law of either state, appellant Barton should be permitted, if he can, to establish a variety of "benefits" flowing from his law suit, including nonpecuniary benefits, and still come within the scope of the "common benefit" exception.

■ The fourth issue which we address involves causation. If we assume, for present discussion, that appellants are successful in establishing that the merger would have violated a breach of fiduciary duty, and that the abandonment of the merger "benefitted" the shareholder class or the corporation, appellant must still establish that his suit, to some degree, caused Drummond to abandon the merger. Causation is the crucial link upon which any equitable award of attorneys' fees must be based, because if plaintiff's suit did not in some respect cause the abandonment, equitable principles could not justify an award.

■ In considering causation, we are faced initially with a puzzling conflict of laws question—whether Delaware or Alabama law should control? In a case which has since become black letter law, *Klaxon v.*

*Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the U. S. Supreme Court first held that, in diversity cases, federal courts must follow the conflict of laws rule prevailing in the states in which they sit. Since this action was originally brought in Federal District Court for the Northern District of Alabama, we turned to the Alabama conflicts rules for guidance, but uncovered instead a plethora of conflicting doctrines which shed little light on the problem. The question was further confused by the fact that both ABC and Drummond could be classified as "pseudo-foreign corporations" which, although incorporated elsewhere, carry on their principal activities in the state of the forum.

We are left, therefore, with two choices. Appellant argues that Delaware law controls and points to a series of cases directly on point, including *Rosenthal v. Burry Biscuit Corporation*, 209 A.2d 459 (Del.Ch. 1949), *McDonnell Douglas Corp. v. Palley*, 310 A.2d 635 (Del.1973), and *Chrysler Corp. v. Dann*, 43 Del.Ch. 252, 223 A.2d 384 (1966). Appellee, on the other hand, argues that Alabama law should control but furnishes the court with no Alabama cases and indeed this court's research was unable to uncover any. The only other guidance which could aid in determining how Alabama courts would rule is a recent Fifth Circuit case, *Robinson v. Kimbrough*, 620 F.2d 468 (5th Cir. 1980), which adopted a position parallel to the Delaware cases cited above.

Faced with this dilemma, we direct the trial court to apply the laws of Delaware to determine causation upon remand. We justify this direction regarding the issue of causation upon a conflict of law principle known as "dépeçage." As articulated by Professor Willis Reese of Columbia Law School, dépeçage

> is the process of applying the rules of different states to determine different issues in the same case. Use of this process would seem to be an integral part of the modern approach to choice of law

which frequently requires that choice of the applicable law should depend upon the precise issue involved.[1]

Because of its well developed common law regarding the issue of causation, Delaware law would seem most appropriate to govern this issue. Under one choice of law principle, the justified expectations of the parties should be considered in determining which law applies. Where, as here, the parties have chosen to incorporate under Delaware law, application of that law would most reasonably conform with their justified expectations, and we turn therefore to a consideration of Delaware law.

*McDonnell Douglas Corporation v. Palley*, 310 A.2d 635 (Del.1973), involved a stockholder's derivative action brought to rescind the sale of the corporation's preferred stock. Before trial, however, the suit was mooted due to the cancellation of the preferred stock as a result of a merger of the corporation. Nevertheless, the Delaware Supreme Court awarded attorneys' fees to the plaintiffs. McDonnell had argued that the plaintiff would not be entitled to an award of attorneys' fees because the plaintiff had established no "causal connection" between the pendency of the suit and the cancellation of the preferred stock, and further contended that the plaintiff had the burden of proving the causal connection. But the court rejected this position relying on the two earlier Delaware cases which had dealt with the causation issue, *Rosenthal v. Burry Biscuit*, 209 A.2d 459 (Del.Ch.1949), and *Chrysler v. Dann*, 43 Del.Ch. 252, 223 A.2d 384 (1966):

> As to burden of proof, the mootness tests of *Rosenthal* [citation omitted] ... apply: where a stockholder's derivative suit has been rendered moot by subsequent action of the defendant, the latter has the burden of showing no causal connection between the two in order to defeat the stockholder's claim for legal fees and expenses.

---

1. Dépeçage: A Common Phenomenon in Choice of Law, Willis L. M. Reese, 73 Columbia Law Review 58.

McDonnell contends that the mootness rule of *Burry Biscuit* was rejected by this court in *Chrysler.* Such was not intended; indeed, *Burry Biscuit* was cited with approval in *Chrysler.* To clarify any doubt arising from language in *Chrysler,* we hereby expressly approve the mootness rule of *Burry Biscuit.*

*McDonnell Douglas, supra,* at 637.

█ Upon remand, the burden of showing no causal connection between Drummond's abandonment and plaintiff's law suit will rest accordingly upon Drummond.

█ The final issue we consider is whether attorney's fees may be assessed against the corporation, ABC, or alternatively, against Drummond. Appellant has argued that, under the "common benefit" theory, the logical mechanism for spreading the cost of this litigation among those benefited is the corporation, and we agree. Those cases which define "benefit" under the "common benefit" exception make clear that the recovery of fees from the corporation is an appropriate means of spreading the cost of obtaining the benefit among all the shareholders[2] even where no monetary fund has been created.[3]

Appellant further argues, however, that under the "bad faith" doctrine the fees which otherwise would be assessed against ABC and its shareholders should be assessed against Drummond. In support of this position appellant relies upon a series of Supreme Court and Court of Appeals cases[4] which assess attorney's fees against defendants whose prelitigation conduct left plaintiff no alternative but litigation, despite defendants' duty to deal fairly with the respective plaintiffs.

The most recent Supreme Court case cited by appellant is *Roadway Express, Inc. v. Piper,* ––– U.S. ––––, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), in which the Court stated:

> The bad faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. '[B]ad faith' may be found, not only in the actions which led to the lawsuit, but also in the conduct of the litigation.' [Citation omitted.]

Although in this diversity action the Supreme Court cases which appellant relies upon do not directly control the issue, we are persuaded that, under Alabama law,[5] the assessment of attorneys' fees against Drummond would be appropriate upon a determination that Drummond acted in bad faith. Bad faith might be inferred, for example, where the evidence revealed that Drummond refused to negotiate modified merger terms when it had knowledge that the proposed merger was likely to constitute a breach of fiduciary duty to the ABC shareholders. Upon a finding of bad faith prior to, or in the course of, the litigation, assessment of attorney's fees against Drummond would be appropriate.

In light of the foregoing discussion, we REMAND.

2. *Mencher v. Sachs, supra.*

3. *Saks v. Gamble,* 38 Del.Ch. 504, 154 A.2d 767 (1958).

4. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *Vaughn v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), and *Rolax v. Atlantic Coast Line Railroad,* 186 F.2d 473 (4th Cir. 1951).

5. In *Wyatt v. Stickney,* 344 F.Supp. 387, 408 (M.D.Ala.1972), *aff'd.,* 503 F.2d 1305 (5th Cir. 1974), a case involving substandard conditions in state mental hospitals, then District Judge Frank Johnson noted that:

> Evidence offered at trial demonstrated that [the defendants] had knowledge prior to the initiation of this suit of the unconstitutionally substandard conditions.

The court then held that the nonfeasance of the defendants in failing to remedy the substandard conditions, "constitutes bad faith which necessitated the expense of litigation. This bad faith forms a valid basis for the granting of attorneys' fees."