**R.B. SHIELDS, Leslie B. Daniels, and Chappaqua Family Trust, on behalf of himself and all others similarly situated, and derivatively on behalf of Resorts International, Inc., Plaintiffs,**

v.

**Charles E. MURPHY, Jr., Thomas S. Murphy, Henry B. Murphy, Robert Peloquin, William M. Crosby, George A. Barascillo, Jr., William Druz, and Mitchell Sviridoff, Defendants,**

v.

**Resorts International, Inc., Nominal Defendant.**

**Civ. A. No. 86–3931(SSB).**

United States District Court, D. New Jersey.

Aug. 4, 1987.

Motion for Reconsideration and Sanctions Sept. 8, 1987.

601

Whitman & Ransom by Paul M. Brown, Michael S. Press, John Newell, Wm. David Cornwell, New York City, and Sterns, Herbert, Weinroth & Petrino, P.A. by Joel H. Sterns, Paul M. O'Gara, Trenton, N.J., for defendants Charles E. Murphy, Jr., Robert D. Peloquin, William M. Crosby and Resorts Intern., Inc.

Francis & Berry by Hugh Francis, Morristown, N.J., for defendants George A.

Barascillo, Jr., William Druz, Mitchell Sviridoff.

Archer & Greiner by John P. Hauch, Jr., Steven J. Fram, Haddonfield, N.J., for defendants Thomas S. Murphy and Henry B. Murphy.

Greenfield & Chimicles by Richard D. Greenfield, C. Oliver Burt, III, Brenda M. Nelson, Haverford, Pa., and Levin & Fishbein by Arnold Levin, Philadelphia, Pa., and Wolf, Maldenstein, Adler, Freeman & Herz by Daniel W. Krasner, New York City, and Ballen, Keiser & Gertel, P.C.A. by Arthur E. Ballen, Joel Aronow, Camden, N.J., for plaintiff and the Class.

## OPINION

BROTMAN, District Judge:

This action was brought as a class action on behalf of all shareholders of Resorts International, Inc. ("Resorts"), and as a derivative action on behalf of Resorts. It arose out of the alleged misconduct of Resorts' Board of Directors in response to offers seeking to purchase Class B shares of Resorts. The complaint was filed in October, 1986 and was amended twice thereafter. The second amended complaint, the subject of the motions pending before the court, contains three counts. Counts I and II are class action claims, the class being all persons who own shares of common stock of Resorts. Second Amended Complaint at ¶ 7(b). Count III asserts a derivative action brought by plaintiff R.B. Shields on behalf of Resorts.

Count I alleges that defendants violated Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder by making material misrepresentations and/or omissions in order to manipulate the price of Resorts' shares, and filing a misleading Form 14D–9 with the Securities Exchange Commission. Count II alleges that defendants breached fiduciary duties owed to Resorts' shareholders by not considering various offers to buy the Class B shares of Resorts. Count III claims that defendants breached their fidiucary duties and wasted corporate assets by "proceeding rapidly to establish an ESOP [employee stock ownership plan] and to utilize Resorts' funds and/or borrowing power to purchase the Class B shares owned by the Crosby Estate, the beneficiaries thereof and the members of the Crosby family." Second Amended Complaint at ¶ 33. Plaintiffs request that this court enjoin Resorts from establishing an ESOP and order defendants to negotiate in good faith with Pratt or any prospective purchaser of Resorts shares.

On March 8, 1987, Donald J. Trump ("Trump"), the Estate of James M. Crosby, and members of the Crosby and Murphy families entered into an agreement under which Trump would buy the Class B shares held by those individuals and the Estate for $135 per share. The agreement further provides that after the "closing date," Trump shall commence a tender offer for all outstanding Class B shares at a price no less than $135 per share. Plaintiffs agree that consummation of the deal with Trump renders their action moot.

Defendants moved to dismiss the second amended complaint on the grounds that the claims asserted therein are legally insufficient under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6), and that plaintiffs failed to satisfy the requirements of Fed.R.Civ.P. 23.1, and of Delaware law that applies to derivative actions. Defendants also moved for Rule 11 sanctions against plaintiffs' counsel. Plaintiffs moved for voluntary dismissal under Fed.R.Civ.P. 41(a)(2), and for a grant of attorneys' fees.

## I. DISCUSSION

### 1. Dismissal

Under Fed.R.Civ.P. 41(a)(2), the court can dismiss an action upon such terms and conditions as it deems proper. Dismissal on motion under Rule 41(a)(2) is within the sound discretion of the court and may be granted if the court believes that defendants will not be seriously prejudiced by such dismissal. See 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2364 (1971).

In the case at bar, the action has now become moot by the agreement between Resorts and Trump. The court will thus dismiss this action with prejudice.

As the action is dismissed as moot, the court need not consider defendants' motion to dismiss except to the extent that the arguments defendants raise must be considered in determining whether plaintiffs should receive attorneys' fees.

## II. ATTORNEYS' FEES

■ "Counsel fees and expenses incurred in litigation are not ordinarily recoverable in the absence of a statute or contract authorizing them." *Kahan v. Rosenstiel*, 424 F.2d 161, 165 (3d Cir.) (*citing Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967)), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). One exception to this rule, the "common benefit" or "common fund" equitable doctrine, allows for recovery of attorneys fees despite the absence of a specific statutory or contractual provision if certain conditions are met. *Id.; Barton v. Drummond Co.*, 636 F.2d 978 (5th Cir. 1981). The purpose of this exception is to compensate counsel for beneficial results they produced. *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980).

■ Where a defendant takes steps to moot a derivative action, plaintiffs should be awarded fees if the action was meritorious, a substantial benefit was conferred, and the derivative action had a causal connection to the conferred benefit. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir.1984); *Lewis v. Anderson*, 692 F.2d 1267 (9th Cir. 1982); *Barton, supra*, at 984; *Kahan, supra; Allied, supra; McDonnell Douglas Corp. v. Palley*, 310 A.2d 635 (Del.1973); *Chrysler Corp. v. Dann*, 43 Del.Ch. 252, 223 A.2d 384 (Del.1966); *Rosenthal v. Burry Biscuit Corp.*, 42 Del.Ch. 279, 209 A.2d 459 (Del.Ch.1949). Plaintiff has the burden to prove that the derivative action was meritorious at the time of filing, and that a substantial benefit was conferred on the corporation. *See Allied, supra* 413 A.2d at 879. "Meritorious" has been interpreted to mean that the action would have survived a motion to dismiss. *Kahan, supra* at 167; *Lewis v. Anderson, supra; Chrysler, supra* 223 A.2d 384 at 387 (adding that the plaintiff must possess knowledge of provable facts which hold out some reasonable likelihood of ultimate success). The benefit conferred need not be pecuniary but can be nonpecuniary. *See Mills, supra* at 391–96, 90 S.Ct. at 625–28; *Koppel, supra* at 134–35; *Allied, supra* at 878. If plaintiff can demonstrate these two elements, merit and substantial benefit, the burden then shifts to defendant to prove that the lawsuit did not cause it to take the action which ultimately rendered the suit moot. *Koppel, supra; Barton, supra* at 985; *Allied, supra* 413 A.2d at 880.

■ In the case at bar the court finds that plaintiffs' complaint, at least in part, would have survived a motion to dismiss. Had the action not been rendered moot, the court would have denied the motion to dismiss Counts I and II. The allegations were sufficiently pleaded to meet the requirements of Fed.R.Civ.P. 9(b) as the Third Circuit has liberally applied that rule. *See Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983). The fact that defendants were able to submit an answer to a substantially similar complaint filed in the Delaware Chancery Court is further evidence that plaintiffs' Second Amended Complaint was pled with sufficient particularity to enable defendants to frame an answer and prepare a defense. *See Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463, 475 (M.D.Pa.1985); Affidavit of Michael S. Press, Exhibit A. In addition, taking all allegations as true and drawing all inferences in plaintiffs' favor, as is required in evaluating a motion to dismiss under Rule 12(b)(6), *see Conley v. Gibson*,

355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556 (3d Cir.1980), the court finds that Counts I and II would survive a motion to dismiss under that rule. The court, however, would have dismissed Count III for failure to make a demand on the Board of Resorts, a requirement of Fed.R.Civ.P. 23.1.

▮ Fed.R.Civ.P. 23.1 requires that in a derivative action, the complaint shall

allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for [the plaintiff's] failure to obtain the action or for not making the effort.

Fed.R.Civ.P. 23.1. Plaintiffs did not make a demand upon the Board of Directors of Resorts and contend that such a demand should be excused as futile.

State law determines whether plaintiffs are excused from the demand requirement. *Lewis v. Curtis*, 671 F.2d 779, 785 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). The court will apply the law of the state of incorporation, here Delaware, as there is no other state with a more significant relationship. In order to determine whether a demand would have been futile, the court will apply the test announced by the Delaware Supreme Court in *Aronson v. Lewis*, 473 A.2d 805, 811 (Del.1984). To excuse a demand on the board, the court:

must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise a product of a valid exercise of business judgment. Hence, the [court] must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board's approval thereof.

*Tabas v. Mullane*, 608 F.Supp. 759, 765 (D.N.J.1985), *citing Aronson, supra* 473

A.2d at 814–15. *See also, Pogostin v. Rice*, 480 A.2d 619 (Del.1984). "The burden is on the plaintiff to show that the requirements of the rule have been satisfied." *Tabas, supra* at 766, *citing Kaufman v. Beal*, C.A. Nos. 6485, 6526 (Del.Ch. Feb. 25, 1983). Stricter pleading requirements are imposed than the usual requirement that the allegations of the complaint must only give fair notice of a claim. *Id.*

▮ Applying this test to the case at bar, the court finds that plaintiffs' failure to make a demand was not excused. First, plaintiffs did not plead with particularity their reasons for not making a demand. The complaint merely states that "No demand on Resorts' Board of Directors is necessary and is excused because each of the directors has conspired and participated with the other defendants to perpetuate their control over Resorts in the foregoing manner." Second Amended Complaint at ¶ 35. Second, plaintiffs did not allege particularized facts creating the reasonable doubt required. They did not adequately specify how the defendants each lacked independence or disinterestedness. Although plaintiffs amended their complaint to include all six directors of Resorts, the mere fact that the action is against every director, does not render a demand futile. *See Seidel v. Public Serv. Co.*, 616 F.Supp. 1342, 1350 (D.N.H.1985) ("[T]he mere fact that all of the director-defendants are named furnishes no excuse for failure to make such a demand."). Merely suing the entire Board without more concrete and specific allegations is insufficient as three of the six members of the Board of Resorts have been certified as fully independent by the New Jersey Casino Control Commission. *See* Notice of Annual Meeting and Proxy Statement, dated May 16, 1986, Affidavit of Michael S. Press, Exhibit B.

▮ Turning to the actual transaction challenged in Count III, the complaint does not allege that an ESOP was formed, but that the Board was "proceeding" to establish one. Plaintiffs have not alleged sufficient facts to establish that such exploration was not a valid exercise of business

judgment. Although the analysis to determine if demand is futile is based on the allegations in the complaint, the court notes that defendant has submitted an affidavit which states that the Board was simply considering the option of an ESOP; it had asked the three independent directors to study it, but had not taken any action on it. Affidavit of Michael Press at ¶¶ 6–7.

 As stated above, the court finds that Counts I and II are meritorious for purposes of the attorney's fees analysis. Although the court finds that the derivative count, Count III, is not meritorious, attorneys' fees may still be appropriate. This is consistent with actions taken by other District Courts. In *Prudential-Bache Securities, Inc. v. Matthews,* 627 F.Supp. 622 (S.D.Tex.1986), for example, plaintiffs moved for voluntary dismissal of a derivative action which they contended had become moot. Defendants moved for dismissal with prejudice. The court dismissed the action stating that the merger of the corporation rendered it moot. The court then proceeded to consider attorneys' fees for plaintiff under the common benefit exception.

 The deal with Trump meets the requirement that a "substantial benefit" be conferred on Resorts. The substantial benefit requirement has been interpreted quite broadly and has been held to include pecuniary as well as nonpecuniary gains. *Mills, supra* at 394–96, 90 S.Ct. at 626–28 (citation omitted). *See, e.g., Koppel v. Wein, supra* (seeking to prevent general partners from amending general participation agreement in a way that would have reduced participation rights held to be a substantial benefit); *Barton, supra* (avoidance of unfair merger held to be substantial benefit); *Kopet v. Esquire Realty Co.,* 523 F.2d 1005 (2d Cir.1975) (deterring future misconduct by management held to be substantial benefit); *Bosch v. Meeker Cooperative Light & Power Ass'n,* 257 Minn. 362, 101 N.W.2d 423 (1960) (judicial determination that corporate directors' election was invalid held to be a substantial benefit). The purchase by Trump of the Crosby Estate's Class B shares and a subsequent tender offer for the remaining Class B shares at $135 per share benefits Resorts and its shareholders financially and nonfinancially.

Turning to the requirement of causation, the court has reviewed the entire course of this litigation and believes that the action Resorts took in making an agreement with Trump was not caused by this lawsuit. Resorts had good reason for not accepting the offers from the bidders with whom plaintiffs asked this court to order the company to negotiate. "Both the Seatex and Peloquin offers ... turned out to be complete shams and perhaps even fraudulent." Oram Affidavit at ¶ 7. There were also valid reasons supporting both the company's apparent reluctance to sell Resorts to Pratt, and its final decision to make a deal with Trump. Regarding the ESOP, the company was merely considering this as another option. The Board appointed a special committee of the three independent directors to study the matter and report to the Board. "These Directors, in turn, hired a small team of compensation experts, bankers and lawyers to assist in their study. As of today [April 8, 1987], the team of experts has not concluded its study, and the Independent Committee has not made a report to the entire Board." *Id.* at ¶ 10. It does not appear, as plaintiffs would suggest, that Resorts was going ahead with the ESOP and decided to abandon this plan because of this lawsuit.

The court, as stated above, believes, based on the record before it, that this lawsuit was not the cause of the Trump deal. However, before making any final determination, the court will hold an evidentiary hearing solely on the issue of causation. In *Barton, supra,* the Fifth Circuit held that the district court erred in dismissing the minority shareholder's suit for attorneys' fees without having conducted an evidentiary hearing on, *inter alia,* the issue of causation. The court remanded the case for the district court to hold such a hearing. Similarly, in *Koppel, supra* at 35, the Second Circuit remanded the action to

the district court for a hearing to determine whether plaintiffs' suit was a substantial cause of the benefit obtained by defendants.

The parties will thus have a hearing on *Monday, August 24, 1987 at 9:30 a.m.*, at which time defendants have the burden of proving that the deal with Trump was not caused by the lawsuit. The court will reopen discovery solely on the issue of causation. All discovery must be completed two weeks from the date this opinion is filed. Of course, if the parties reach an agreement on the issue of attorneys' fees or if plaintiffs withdraw their motion, the hearing will be unnecessary.

## III. SANCTIONS

The court feels, but has not as yet determined, that this entire action may have been brought prematurely. The derivative count, for example, charges defendants with breaching fiduciary duties and wasting corporate assets by proceeding to consider establishing an ESOP. There is nothing inherently wrong with an ESOP. In fact, this is a very common device. Furthermore, Resorts' consideration of the ESOP was at such an early stage that the Board had not even heard the report from the committee created to study the plan. The fact that the complaint had to be amended twice in such a short period of time is further evidence that the action was brought prematurely. Plaintiffs amended their complaint by adding other plaintiffs, adding other defendants, adding some claims, and altering preexisting claims.

The business judgment rule is an acknowledgement of the managerial prerogatives of the directors.

> It is a presumption that in making a business decision the directors of a corporation acted on an informed basis in good faith and in the honest belief that the action taken was in the best interests of the company. Absent an abuse of discretion, that judgment will be respect-

ed by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption.

*Aronson, supra* 473 A.2d at 812 (citations omitted).

The purpose of the business judgment rule is to give directors the space and freedom to use their business judgment to make decisions in the best interests of the company. If it later appears that such judgment was abused and duties were breached, shareholders can and should seek judicial redress. Courts, however, should not interfere too early on with the decision-making process of the board of directors. Plaintiffs, in this case, should not have used the court to disrupt the corporate decision-making process and prematurely intrude into the internal business affairs of Resorts and the Crosby Estate.

Premature lawsuits not only cause unnecessary expense for the parties involved, but they are judicially inefficient. The court expended significant time and energy addressing the matters raised in this case including motions for expedited discovery, standard discovery, to amend the complaint, to disqualify counsel, to dismiss the complaint, etc. The court held several hearings on short notice and heard oral arguments on the various motions. Then, six months later, the action became moot when Resorts received and accepted what it considered, and it appears reasonable to assume, was its best offer thus far—the offer from Trump for the Class B shares. *See* Affidavit of John Oram at ¶¶ 7, 13.

Finally, the court is concerned that attorneys in general might have a tendency to file shareholder derivative suits prematurely. If attorneys become overzealous in their desire to be the first to file a shareholders derivative suit, it may appear that they are motivated more by their personal financial gain than their desire to protect shareholders from abusive boards of directors.[1] Furthermore, such blind haste may result in vague, ill-pled complaints,

---

1. By using this language, the court is not at this point suggesting that plaintiffs' counsel's chief motive is personal financial gain.

quickly prepared and filed with the anticipation that as the facts are later uncovered, the complaint can be amended. This would be a misuse of the judicial system.

Defendants have moved for Rule 11 sanctions. The court will reserve decision on this motion until after the evidentiary hearing on the causation issue respecting plaintiffs' application for attorneys' fees.

An appropriate order will be entered.

### ORDER

This matter having been brought before the court; and

The court having considered the submissions and arguments of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 4th day of August, 1987, hereby ORDERED:

1. The motion of plaintiffs for voluntary dismissal of the Second Amended Complaint pursuant to Fed.R.Civ.P. 41(a)(2) is GRANTED, and the action is DISMISSED WITH PREJUDICE as it has become MOOT.

2. The motion of Defendants for Rule 11 sanctions is RESERVED.

3. The motion of plaintiffs for attorneys' fees is RESERVED, and an evidentiary hearing is scheduled on the issue of causation for MONDAY, AUGUST 24, 1987 at 9:30 a.m.

4. Discovery is reopened on the issue of causation and must be completed within two weeks of the filing date of this order.

### MOTION FOR RECONSIDERATION AND SANCTIONS

Presently before the court are plaintiffs' motion for reconsideration of the court's opinion filed August 4, 1987 and defendants' motion for sanctions under Fed.R. Civ.P. 11 (Plaintiffs' motion for counsel fees having been withdrawn).

Plaintiffs request reconsideration of the court's decision of August 4, 1987 on four grounds: 1) That the court incorrectly based findings of fact solely on affidavits submitted by defendants' counsel; 2) That the August 4, 1987 order dismissed this action with prejudice instead of without prejudice; 3) That the court incorrectly framed the issue to be considered at the evidentiary hearing regarding causation; and 4) That the August 4, 1987 decision should not be published. The court will address each ground.

1) Statements of fact in the August 4, 1987 opinion were based on the entire record before the court. The court stated this in its opinion. Furthermore, it is perfectly permissible and standard practice to cite affidavit testimony to support statements of fact.

2) Fed.R.Civ.P. 41(a)(2) expressly permits a dismissal under this rule to be with prejudice. The court, in its discretion, chose to dismiss with prejudice and counsel has not offered any reason why dismissal should have been without prejudice. In response to another point raised by plaintiffs in regard to the dismissal, the court notes that no class was ever certified in this action.

3) As plaintiffs have withdrawn their motion for attorneys' fees, the third ground upon which they seek reconsideration is moot.

4) The court decides whether its decisions should be published. Plaintiffs have not convinced the court that its opinion of August 4, 1987 should be withdrawn from publication. Furthermore, as defendants point out, any misconceptions stated in the media regarding that opinion can be clarified by its publication.

For the reasons stated above, the court will deny plaintiff's motion for reconsideration.

Turning to defendants' motion for sanctions, while the court has fully expressed its position as to the conduct of the parties in this litigation in its August 4, 1987 opinion, it does not believe sanctions are warranted and none will be imposed. As stated in that opinion, the court does not believe plaintiffs' complaint was completely without merit.

An appropriate order will be entered.

## ORDER

This matter having been brought before the court on motions of the parties; and

The court having considered the submissions of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 2nd day of September, 1987, hereby

ORDERED:

1) Plaintiffs' motion for reconsideration of this court's order filed August 4, 1987 is hereby DENIED;

2) Defendants' motion for sanctions under Fed.R.Civ.P. 11 is DENIED.

3) Plaintiffs' motion for counsel fees is MOOT, since that motion has been withdrawn with prejudice.

4) No costs.