650 F.2d 1349
 Fed. Sec. L. Rep. P 98,236
James G. JUNKER, Individually and on behalf of himself and
other Shareholders of Reco Investment Corporation,
Plaintiff-Appellee,
v.
Walter H. CRORY, Chesley D. Crory, Joseph B. Mongogna, James
T. Carmen, Jack R. Walter, James Davidson, Jr., Frederick P.
Heisler, Road Equipment Company, Reco Investment Corporation
and Road Equipment Company, Inc., Defendants-Appellants.
 No. 79-3221.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 July 17, 1981.
 Klein & Rouse, Henry L. Klein, New Orleans, La., for defendants-appellants.
 James J. O'Connor, P. J. Stakelum, III, Paul E. Hurley, New Orleans, La., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before SKELTON*, Senior Judge, RUBIN and REAVLEY, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 A Louisiana resident who was a minority shareholder in a corporation voted against its proposed merger into another corporation. The merger was approved on the strength of the voting power of the majority shareholders. Once the merger was consummated, the minority shareholder sought relief in federal district court on a variety of federal securities law claims and on pendent claims for violation of state-imposed duties. We affirm the trial court's judgment in favor of the plaintiff shareholder against the corporate officers and directors based on the pendent claims, and, therefore, reach the federal claims only in regard to the remaining defendants, the corporate attorney and the surviving corporation. As to these defendants, we also affirm the judgment in favor of the minority shareholder. We reverse that part of the judgment awarding a derivative recovery to the merged corporation. Because the trial court's award of damages failed to consider the value of the stock received by the minority shareholder in the merger, we remand for calculation of a reduction in the damages to reflect that value. Finally, we modify the judgment to eliminate the award of attorney's fees because we perceive no legal basis for it.
 
 I.
 
 2
 Road Equipment Company, Inc., a Louisiana corporation engaged in selling construction equipment, was organized in 1959 by Walter Crory, his wife, Chesley Crory and James G. Junker. Walter Crory owned all the voting stock in that corporation. Junker joined Road as a salesman and was elected vice-president and general sales manager at the time of Road's incorporation.
 
 
 3
 Another Louisiana corporation, Reco Investment Corporation, was organized in 1962 by Walter Crory, Chesley Crory, James Carmen, Jack Walter and Junker to acquire, improve, and lease industrial property. Junker paid $162 for 162 shares of the 1,000 shares of Reco common stock outstanding. Reco subsequently purchased from the Illinois Central Railroad three adjacent tracts of land in 1963, 1965, and 1967 respectively. Reco improved the properties by constructing a brick office building on one tract in 1963 and a steel office building on another in 1965.
 
 
 4
 Although it is not clear from the record whether he quit or was fired, Junker's employment with Road terminated in late 1965 and he started another business that competed directly with Road. Crory claimed that a settlement agreement entered into with Junker when he left Road's employ required the surrender of Junker's 162 shares of Reco stock. However, the trial court found that Junker retained ownership of his Reco shares after he ended his relationship with Road. That finding, which is not directly attacked by the defendants on appeal, is not clearly erroneous.
 
 
 5
 Thus, Junker owned 16.2% of Reco, i. e., 162 of 1000 outstanding shares of stock. The other 83.8% of Reco was owned by Walter Crory (28.4%), Chesley Crory (21.2%), Joseph Mongogna (9%), James Carmen (16.2%) and Jack Walter (9%), all of whom were joined as defendants in this action. These five defendants constituted the board of directors and officers of both Reco and Road.[1]
 
 
 6
 In 1963, Reco leased to Road one of its industrial properties including the office building located on it for a monthly rental of $1,200. The lease had a term of ten years with an option to renew for an additional ten years at a monthly rental of $1,320. In 1972, subsequent to Junker's departure from Road and without notifying him, Reco entered into a new twenty-five year lease with Road at a monthly rental of $1,200, which was increased to $1,320 in 1973. The new lease expanded the size of the leased premises and included a renewal option for another twenty-five years at a $1,500 monthly rate.
 
 
 7
 From Reco's inception it had paid Road a management fee of $1,200 annually. After Junker's departure from Road, the boards of directors of the two corporations agreed to increase the management fee to $3,600 a year. Subsequently, the fee was again increased to $4,800 per annum. Junker received no notice of these increases.
 
 
 8
 Junker did receive notice of a Reco shareholders' meeting held in April 1973, to discuss Reco's indebtedness to Road in the amount of $71,735. This debt represented the management fees and monies advanced by Road for Reco's other expenses. Thus, the rental being paid by Road was apparently inadequate to cover the expenses incurred by Reco in connection with the property it leased to Road. The shareholders' meeting notice indicated that, if the capital needed to satisfy the debt could not be raised, dissolution of Reco might be necessary. At that meeting, Frederick Heisler, an attorney who represented Walter Crory, as well as Reco and Road, and who attended the meeting as proxy for Walter and Chesley Crory, was appointed chairman. He explained that Reco would either have to borrow the funds needed to pay the Road debt or liquidate. Junker's proxy attended the meeting and made a motion that Reco retain an appraiser to determine the fair market value and fair rental value of its property. He also moved that, in the event Reco was unable to locate a tenant willing to pay that fair rental value, the property be sold at its fair market value. He also proposed that, if the appraisal established that the rentals paid by Road were inadequate, the lease between Reco and Road be terminated and Reco seek damages from its officers and directors. The motion was not seconded and thus never came to a vote. The liquidation was approved over Junker's opposition and Heisler was appointed as liquidator. Shortly thereafter, Junker, through his attorney-proxy, wrote a letter to Reco's board of directors stating his belief that Reco's property had greatly increased in value and that the rentals paid by Road to Reco were inadequate.
 
 
 9
 Junker received notice in July, 1973, of another Reco shareholders' meeting to discuss rescission of the liquidation order and a merger of Reco and Road on a book value basis. Heisler was once again present, this time as proxy for Chesley Crory and James Carmen. He stated that, in the opinion of the real estate experts to whom he had spoken, liquidation was not feasible because of the then existing credit crunch and high interest rates. Heisler suggested that, because Reco was unable to satisfy its indebtedness to Road, the only alternative was to merge Reco into some other company, such as Road, and that by merging Reco into Road, the debt owed to Road would be extinguished.
 
 
 10
 Junker voted to terminate the liquidation of Reco, but he voted his 162 shares against the proposed merger with Road. However, the defendants voted the remaining 838 shares of Reco in favor of the merger. The 83.8% of the voting power controlled by the defendants was sufficient to approve the merger. Because the merger was approved by at least 80% of the total voting power, Junker was not entitled to demand that Reco pay him fair cash value for his shares pursuant to La.Rev.Stat. 12:131.[2]
 
 
 11
 The defendants, constituting and acting as Reco's board of directors, approved the merger. They also approved the merger in their capacity as officers and directors of Road. The merger formula required the exchange of one share of Reco stock, which had a per share book value of $17.55, for one and a half shares of Road stock, which had a book value of $12.73 per share. Thus, Junker received 265.52 shares of Road for his 162 shares of Reco stock. Book values of Reco's land and buildings were used in determining the merger formula despite the fact that the Reco property was located in an area where real estate values had ballooned since the time the property was acquired and despite the fact that the cost of constructing buildings had also risen substantially.
 
 
 12
 The court credited the expert testimony of the plaintiff's appraiser as to the fair value of Reco's property. The defendants offered no expert testimony but relied on sales of what they contended were comparable properties to argue that the expert testimony was incorrect. The trial judge did not consider this sufficient to impugn the expert testimony.
 
 The following table sums up the testimony:
 
 13
 DEFENDANTS'
 COST VALUATION PLAINTIFF'S
 (PURCHASE FOR MERGER EXPERT'S
 PRICE) FORMULA VALUATION[3]
 IN 1973
 ----------- ----------- ------------------------
 1973 1975
 ---- ----
3 parcels
of land $ 89,122.52 $100,286.48 $338,700.00 $463,500.00
2 buildings 154,049.36 95,000.00 234,946.00 251,409.00
 ----------- ----------- ----------- -----------
TOTALS $243,171.88 $195,286.48 $573,646.00 $714,909.00
 ----------- ----------- ----------- -----------
 
 
 14
 Thus, the plaintiff's real estate expert valued the Reco land and buildings in 1973 at $573,000, and in 1975, at $715,000. Their book value, i. e., the cost of the land added to the cost of the buildings reduced by depreciation of those structures, was only $195,000 in 1973, and of course, even less in 1975.
 
 
 15
 An accountant, called by the plaintiff as an expert on the valuation of closely held corporate stock, testified to his opinion concerning the fair market value of the stock of both Reco and Road at the time of the 1973 merger. He followed Internal Revenue Service and accounting guidelines in arriving at his valuations of the stock. It was his opinion, credited by the trial judge, that, in placing a value on such stock, underlying corporate assets are most important in an investment company such as Reco, while net earning capacity is most significant in relation to a company like Road that is engaged in sales. Thus, in valuing the Road stock, the expert gave greater weight to factors such as gross profits, debt-equity ratios and net income, while in relation to the value of Reco stock he gave more consideration to the assets, i. e., the land and improvements, and liabilities such as bank loans and the debt owed to Road. In contrast to the merger basis, he valued the stock of the two corporations at the time of the merger as follows:
 
 
 16
 DEFENDANTS' PLAINTIFF'S
 MERGER EXPERT'S
 FORMULA VALUATION
 (Book Value)
 ------------ -----------
Reco Stock $17.55 $392.01
Road Stock 12.73 10.44
 
 
 17
 Regarding the amount of the management fees paid by Reco to Road, the real estate expert testified that the normal management fee in 1973 was six to ten per cent of the gross rental. The plaintiff's expert accountant testified that the management fees paid by Reco ranged from twenty to twenty-two percent of gross rental. Thus, the management fees that Road charged Reco were substantially greater than the industry average.
 
 
 18
 The merger was effective in October, 1973. Two months later, Walter Crory wrote all the Road shareholders, including Junker, who was then a Road shareholder as a result of the merger, informing them that the 1973 annual report would show that Road experienced a $34,539 loss in 1973 as compared with a $53,419 profit in 1972. That loss was attributed to large purchases of inventory that had not been sold to customers. Neither the purchases nor their potential effect on Road's net income had been disclosed at the shareholders' meeting when the merger was discussed.
 
 
 19
 At the time of trial, Junker had died and the Road stock he had received in the merger was owned by his widow. Her attorney attempted to establish, in portmanteau fashion, that Junker was entitled to relief for violation of several sections of the federal securities laws including: Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5; Section 12(2) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. § 77l (2); and Section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a).[4] In pendent claims, Junker also contended that the defendant officers and directors of Reco were liable for violations of their state law fiduciary duties under La.Rev.Stat. 12:91 and that the actions of all the defendants constituted fraud in violation of La.Civ.Code art. 1847. Finally, Junker contended that he brought this action as an individual shareholder of Reco seeking to enforce the rights of that corporation against its officers and directors for violations of their fiduciary duties. Thus, nominally his complaint sought a derivative recovery for that corporation pursuant to Rule 23.1, Fed.R.Civ.P.
 
 
 20
 The trial judge found that the defendant officers and directors, as well as Heisler, the attorney who represented both corporations, were familiar with the financial conditions and the operations of the two closely held corporations. He found that they intentionally or recklessly misrepresented or failed to disclose to Junker each corporation's true financial condition, the true values of Reco's property and improvements, and the real value of each corporation's stock. He further found that the management fees that Road charged Reco were excessive and the rentals paid to Reco by Road inadequate. Based on these findings, he held the officers and directors of Reco liable for violations of fiduciary duties owed to Reco and to Junker under state law. He further held that the defendant officers and directors together with attorney Heisler violated several sections of the federal securities laws, i. e., Section 10(b) of the 1934 Act and Rule 10b-5, as well as Sections 12(2) and 17(a) of the 1933 Act. The court awarded Reco a derivative recovery, casting the officers and directors in judgment together with Road for the value of that corporation's stock as of the merger date, $392.01 per share, the figure provided by plaintiff's expert as the true value of Reco's shares at the time of the merger, times 1,000 shares, or $392,010. According to the court's judgment, each Reco shareholder was entitled to recover his proportionate interest in that amount. The court further cast the Reco officers and directors, as well as Heisler and Road, in judgment in favor of Junker's widow for her proportionate interest in the amount awarded to Reco. The judgment did not mention Mrs. Junker's continuing ownership of the 265.52 shares in Road, which Junker received in the merger, and no reduction in the damages awarded to Mrs. Junker was made for their value.
 
 II.
 
 21
 Pursuant to Louisiana law, corporate officers and directors owe a fiduciary duty to the shareholders.[5] Because they have the benefit of superior knowledge regarding the affairs of the corporation, they are obliged by Louisiana law to disclose facts within their knowledge to shareholders and to deal with them in an atmosphere of trust and confidence. Mansfield Hardwood Lumber Co. v. Johnson, 268 F.2d 317 (5th Cir.), cert. denied, 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959). That fiduciary obligation takes on heightened importance in a situation, such as that in this case, in which the officers and directors control the voting power of the corporation and the minority shareholder represents an opposing faction.
 
 
 22
 The trial court's findings, which are not clearly erroneous, support its conclusion that the five defendants who held positions as Reco's officers and directors violated the fiduciary obligation owed to Junker under state law. The evidence established that they failed properly to value the Reco stock for purposes of the merger, resulting in a merger formula that was detrimental to Reco shareholders. Ignoring Junker's protestations, they caused Reco to lease property to Road for inadequate rentals and Road to charge Reco excessive management fees. They failed to disclose to Junker at the shareholders' meeting in which the merger was discussed the true financial position of the two corporations, including Road's large inventory purchases. Thus, the evidence supports the trial judge's finding that the defendants violated the fiduciary obligation they owed Junker.
 
 
 23
 The defendants assert one plausible defense[6] to their liability for breach of this state law duty. Relying on principles of estoppel, they contend that Junker's earlier objection to the liquidation of Reco bars his claims arising out of the merger because the relief he is afforded by a claim for damages, i. e., recovery of the fair value of his Reco stock measured by the fair value of the corporation's assets, is the same recovery he would have enjoyed in a liquidation of the corporation.
 
 
 24
 While Louisiana law recognizes that, under certain circumstances, equitable estoppel may bar a claim, that defense is not favored and a defendant asserting it bears the burden of proving all its essential elements by a preponderance of the evidence.[7] The essence of estoppel in Louisiana, as in most states, is an action or representation by one party that is justifiably relied on by the other party to the other's detriment.[8] Thus, the three elements of the estoppel defense are: (1) a representation by action or word of the plaintiff, (2) the defendant's reliance on that representation and (3) a detrimental change in position by the defendant because of that reliance.[9]
 
 
 25
 The defendants completely failed to establish that their decision to rescind the liquidation order and approve the merger resulted from their reliance on Junker's earlier objection to the liquidation of Reco. According to the minutes of the shareholders' meeting at which the merger was approved, Heisler stated, "liquidation was not possible at (that) time because of the credit crunch and high interest rates." Nothing in the trial court's findings supports the view that the defendants detrimentally relied on Junker's opposition to liquidation in making their decision to opt for a merger of Reco into Road as a substitute for liquidation. Indeed, the only indication of any reliance by the defendants is Heisler's testimony that, in addition to the tight credit conditions, another reason he suggested the merger as the solution for Reco's financial woes was Junker's objection to the liquidation procedure. In light of the other actions of the defendants, we find this evidence insufficient to support the conclusion that their decision to merge resulted from their justifiable reliance on Junker's opposition to the liquidation.
 
 
 26
 Moreover, there is no evidence that, had the liquidation taken place despite Junker's opposition, he would have received the fair value of his interest in Reco. Although Junker requested an appraisal of the Reco property prior to liquidation, his motion at the shareholders' meeting triggered no response by the defendants. What would have ensued had liquidation occurred and had Junker thereafter sought a partition of the property, we can only conjecture. Given the values the defendants assigned Reco's assets to arrive at the merger formula, we cannot assume that they would have assisted Junker in obtaining the fair value of his shares.
 
 
 27
 Therefore, Junker's opposition to the liquidation does not estop him to complain of the subsequent misconduct of the defendants.
 
 
 28
 Having concurred in the trial court's conclusion that the officers and directors of Reco are liable to Junker for breach of state law duties, we affirm the judgment in Mrs. Junker's favor against these defendants. Our disposition of the claims under state law makes it unnecessary for us to reach the issues raised by the federal securities law claims in regard to the defendant officers and directors.[10]
 
 III.
 
 29
 Heisler, the remaining individual defendant, was not an officer, director or shareholder in either Reco or Road. According to the trial court's findings, he acted as attorney or agent for both corporations as well as for Walter Crory. Finding no state law cause of action on which to ground Heisler's liability to Junker,[11] we turn to the federal securities law claims.
 
 
 30
 The trial court held Heisler liable for violation of Section 12(2) of the 1933 Act, 15 U.S.C. § 77l (2).[12] That section creates a cause of action for a purchaser of securities against one who sold him the securities by means of a prospectus or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made not misleading.[13]
 
 
 31
 To recover under that provision, the plaintiff must establish that the defendant, as a seller of a security under Section 12(2); misrepresented or failed to state material facts to the plaintiff in connection with the sale. Hill York Corp. v. American International Franchises, Inc., 448 F.2d 680, 695 (5th Cir. 1971). In addition the plaintiff must show that he had no knowledge of the untruth or omission. Id. However, the plaintiff need not establish that the defendant acted with scienter or that he relied in any way on the defendant's misrepresentations or omissions. Id.[14]
 
 
 32
 A merger may amount to a purchase or sale of a security for purposes of the federal securities laws.[15] Thus, the exchange of Junker's Reco shares for stock in Road pursuant to the merger qualifies Junker as a purchaser of Road stock.
 
 
 33
 Because a purchaser may recover pursuant to section 12(2) only from his immediate seller, our inquiry focuses on whether Heisler's role in the merger transaction constituted him a seller for purposes of that section. Mere participation in the events leading up to the transaction is insufficient to constitute one a seller of a security. Pharo v. Smith, 621 F.2d 656, 667 (5th Cir. 1980). Only those in privity with the purchaser or those "whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place" are classified as sellers under Section 12. Id. In Hill York Corp. v. American International Franchises, Inc., 448 F.2d at 693, we explained the scope of the Section 12(2) seller definition in terms of proximate causation: a defendant is a Section 12 seller if the injury to the plaintiff flowed directly and proximately from his actions or if he was a motivating force behind the sale. See Lewis v. Walston & Co., Inc., 487 F.2d 617, 621-22 (5th Cir. 1973).
 
 
 34
 Applying the tests articulated in Pharo and Hill York Corp., we held in Croy v. Campbell, 624 F.2d 709 (5th Cir. 1980), that an attorney whose connection with the sale was limited to advising the purchaser on its tax consequences was not a Section 12(2) seller. The attorney in Croy did not attempt to persuade the plaintiffs to make the purchase; he made no representations to them concerning the operational aspects of the project in which the plaintiffs ultimately invested. Id. at 714. In determining that his involvement was insufficient to constitute a proximate cause of the sale, we noted, "(t)his conclusion should not be interpreted to mean that a lawyer who participates in the transaction can never be a seller for purposes of section 12." Id.
 
 
 35
 Heisler's role in bringing about the merger in this case differed significantly from the relatively inactive part played by the lawyer in Croy. According to Heisler's testimony, he initially suggested the possibility of a merger to Walter Crory. The minutes of the Reco shareholders' meeting at which the merger was discussed reflect that Heisler attended as Chesley Crory's proxy and advanced the merger as the solution to Reco's financial problems. He also prepared the merger documents. Thus, unlike the attorney in Croy, Heisler did attempt to persuade the Reco shareholders to make the purchase of Road stock pursuant to the merger. He also made representations at the Reco shareholders' meeting regarding his investigation into possible sales of Reco property and the feasibility of a liquidation of Reco as compared with the merger. The evidence of Heisler's involvement in the effort to bring about the merger supports the trial court's finding that he was a key participant in the transaction. His role was not that of a passive advisor as was that of the attorney in Croy; rather, he was an active negotiator in the transaction, acting as agent-in-fact as well as attorney-at-law, implementor not counsellor. Therefore, we agree with the trial court's conclusion that Heisler's actions brought him within the scope of the seller definition under Section 12(2).
 
 
 36
 Having determined that Heisler's actions constituted him a seller under Section 12(2), we also conclude that his representations made to the Reco shareholders at the shareholders' meeting amounted to an oral communication containing misstatements or omissions of material facts relevant to the merger transaction. In recommending to the Reco shareholders the merger formula based on book values, he failed to inform Junker of material facts concerning the financial conditions of the two corporations. According to Walter Crory's testimony, he delegated to Heisler responsibility for determining the fair value of Reco's property. The trial court found that Heisler's statements regarding real estate market conditions created the false impression that the Reco property was undesirable and not of substantial value on the open market. Heisler also made statements regarding the financial position of Road. Referring to the growth that corporation had sustained, Heisler neglected to mention the large inventory purchases made by Road and the potential effect on Road's net income. Thus, Heisler's statements were misleading in regard to the respective financial conditions of the two corporations.
 
 
 37
 Although Junker was aware of the possibility that the Reco properties were undervalued, he had no knowledge of the material facts regarding the finances of Road. Walter Crory testified that, because Junker's business competed with Road, he would not have permitted Junker access to Road's records even had Junker requested to see them. The trial court found that Junker was unable to obtain information from the defendants as to the true value of the stock of the two corporations. Thus, there were undoubtedly material facts omitted from Heisler's statements of which Junker had no knowledge. Therefore, we conclude that Junker satisfied the requirement that he establish his lack of awareness of at least some of the various untruths or omissions contained in Heisler's statements. See Sanders v. John Nuveen & Co., Inc., 619 F.2d 1222, 1229 (7th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981) (a plaintiff under Section 12(2) need not prove due diligence; all that is required is ignorance of the untruth or omission).
 
 
 38
 While Junker need not establish that Heisler acted with scienter in regard to the misstatements or omissions, Section 12(2) provides the seller a defense if he sustains "the burden or proof that he did not know, and in the exercise of reasonable care could not have known, of (the) untruth or omission...." Section 12(2) of the 1933 Act, 15 U.S.C. § 77l (2). Thus, the defendant escapes liability by proof of a lack of scienter. Hill York Corp. v. American International Franchises, Inc., 448 F.2d at 696. See Sanders v. John Nuveen & Co., Inc., 619 F.2d at 1227-28.
 
 
 39
 The trial court found that Heisler failed to discharge the burden of proof necessary to establish this defense. That factual conclusion was not attacked before us. The evidence indicates that Heisler was familiar with the financial operations of both Reco and Road. In any event, reasonable diligence on his part would have required such familiarity before he recommended the merger to the Reco shareholders. Moreover, the exercise of reasonable care would have required him to seek an appraisal or at least some knowledgeable estimate of the Reco property in assessing its true value. Therefore, we conclude that Heisler did not satisfy the burden of proof required to establish that, exercising reasonable care, he could not have been aware of the material misstatements and omissions in his presentation at the Reco shareholders' meeting.
 
 
 40
 In addition to the individual defendants, the trial court also cast Road, the corporate defendant, in judgment to Junker. As with Heisler, we affirm the judgment against Road based on the federal claim under Section 12(2) without addressing the issues raised by the other claims on which the trial court based liability. See note 10 supra.
 
 
 41
 As the issuer of the shares of stock Junker received in the merger, Road was a seller in that transaction in the ordinary sense of the word. One who parts with securities in exchange for consideration is automatically constituted a seller under Section 12 of the 1933 Act. As to such a person, the proximate cause analysis articulated in Hill York Corp. is inapplicable. See Swenson v. Engelstad, 626 F.2d 421 (5th Cir. 1980) (case involving Section 12(1)).
 
 
 42
 Through its officers and directors, Road failed to disclose to Junker material facts regarding its financial condition and the true value of its stock. Perhaps the most obvious omission involved Road's purchases of inventory to which Walter Crory subsequently attributed the relatively large loss suffered by the corporation in 1973 as compared with the prior year's profits. Thus, Road, acting through its officers and directors, failed to provide Junker with relevant information necessary to make the statements made by Road's officers and directors in regard to the merger not misleading.
 
 
 43
 Moreover, as we have previously discussed, Junker was unaware of Road's financial situation and thus had no knowledge of the material facts regarding that corporation not disclosed by its officers and directors. Because reliance is not an element of the Section 12(2) cause of action, Junker's opposition to the merger does not defeat his claim. Patently, Road's officers and directors knew or should have known that Junker was not provided with a complete picture of the relative financial conditions of the two entities. Thus, Road cannot establish its lack of scienter and is, therefore, unable to avail itself of the due diligence defense applicable to Section 12(2) claims.
 
 
 44
 Heisler and Road have failed to establish a valid defense[16] to bar Junker's recovery against them on the Section 12(2) claims. Therefore, we affirm the judgment in Mrs. Junker's favor against these defendants based on that claim, thus obviating any discussion of the other federal securities claims on which the trial court held these defendants liable.
 
 IV.
 
 45
 We now consider the issues of damages and attorney's fees. The trial court awarded Junker's widow damages in an amount equal to the value of her husband's Reco stock at the time of the merger as calculated by the plaintiff's expert. The judgment failed to mention the 265.52 shares of Road stock that, according to the response to questions put to counsel at oral argument, Mrs. Junker continues to hold.
 
 
 46
 If the purchaser continues to hold the securities, Section 12(2) of the 1933 Act provides for rescission as the appropriate remedy. However, because Reco, the corporation acquired by or merged into Road, is no longer in existence, a complete return to the status quo ante is no longer possible. Therefore, damages was the proper remedy under the Section 12(2) claims, as well as the pendent claims.
 
 
 47
 The defendants contend that Junker failed to prove the amount of his loss by "reasonably relevant evidence as opposed to speculation, conjecture and irrelevant data." This contention amounts to an attack upon the validity of the plaintiff's expert testimony, a charge that was made to the trial judge but rejected by him. The trial judge chose to credit the testimony of the experts advanced by Mrs. Junker and we see no reason to overturn his decision.
 
 
 48
 However, it is necessary to remand to the trial court for a reduction in the amount of Mrs. Junker's damage award to reflect her continuing ownership of the Road shares that her husband received in the merger. The trial court's award of damages measures only the value of what Junker gave up in the merger without an offset for the value of the stock he received. In order to obtain a proper measurement of the loss suffered as a result of the merger, the value of the Road shares as of the date of that transaction must be deducted from the value of the Reco shares as of that same date. Absent such a deduction, the damage award is inflated and fails to represent the true loss attributable to the merger. Therefore, upon remand, the trial court must calculate the value of the Road shares as of the date of the merger and reduce the judgment by that amount.
 
 
 49
 Aside from the award of damages in Mrs. Junker's favor, the trial court cast all the defendants except Heisler in judgment to Reco, denominating that award as a derivative recovery. Based on that derivative award to Reco, the trial court also awarded attorney's fees to Mrs. Junker, payable out of the corporation's judgment, on the theory that a shareholder who brings a successful derivative action is entitled to attorney's fees to be paid out of the monies recovered by him for the corporation. Because we consider Junker's suit to have constituted a derivative action in name only, we reverse the judgment in Reco's favor. Finding no other valid legal basis for the award of attorney's fees to Mrs. Junker, we order the district court, upon remand, to eliminate the attorney's fees award from the judgment.
 
 
 50
 Prior to the merger, Junker owned 16.2% of the Reco stock; the other 83.8% was owned by the defendants. As the result of the merger, Reco is no longer in existence. There is no corporate entity to claim the derivative recovery awarded by the trial court. Thus, the award is, for all practical purposes, recoverable only by the Reco shareholders according to their prior proportionate ownership in the corporation.
 
 
 51
 Because Mrs. Junker has been fully compensated for the value of her husband's Reco shares by the trial court's judgment, the derivative recovery is significant only for purposes of the award of attorney's fees in her favor. However, attorney's fees are not recoverable in a derivative action if the effect of such an award is to shift the liability for those fees to the defendant.[17] The rationale justifying the award of attorney's fees in the successful derivative action is that the plaintiff has accorded the corporation and its shareholders a substantial benefit because the successful derivative action usually creates a fund available to the corporation and its shareholders. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 395-96, 90 S.Ct. 616, 627, 24 L.Ed.2d 593, 608-09 (1970); Shlensky v. Dorsey, 574 F.2d 131, 149 (3d Cir. 1978). The attorney's fees are recouped by the plaintiff out of the common fund created by his suit. Id. See generally 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1841 (1972); 3B Moore's Federal Practice P 23.91 (2d ed. 1980).
 
 
 52
 The trial court's judgment on the derivative claim in this case creates no common fund benefiting the remaining former Reco shareholders other than Junker. Rather, the other shareholders are cast in judgment in the corporation's favor. Therefore, the effect of the award of attorney's fees out of the so-called derivative recovery is to increase the defendants' liability to include the plaintiff's attorney's fees. The award of attorney's fees to the plaintiff who successfully litigates the corporation's claim is not designed "to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." Mills v. Electric Auto-Lite Co., 396 U.S. at 396-97, 90 S.Ct. at 628, 24 L.Ed.2d at 608-09.
 
 
 53
 Thus, Mrs. Junker is not entitled to recover attorney's fees pursuant to the common fund theory that normally applies in derivative actions. Moreover, Reco is no longer a legal entity. The derivative recovery in its favor is unnecessary to make Mrs. Junker whole because the remaining Reco shareholders were all held liable to Mrs. Junker as well as to the corporation. We, therefore, reverse the derivative award in Reco's favor without engaging in a primarily academic discussion of the rights of the defendants as Reco shareholders vis-a-vis the derivative recovery as compared with their respective liability for the award in Reco's favor.
 
 
 54
 Having determined that the trial court's theory did not support the award of attorney's fees, we consider whether any of Junker's remaining claims might justify granting his widow attorney's fees in this case. The pendent claims under Louisiana law do not entitle Mrs. Junker to attorney's fees. In response to questions posed to counsel in writing by the court before oral argument, Mrs. Junker could suggest no Louisiana statutory or jurisprudential authority to support such an award. Louisiana allows the recovery of attorney's fees only when authorized by statute or contract.[18] We find no Louisiana statute providing for an award of attorney's fees in this type of case. Therefore, the pendent claims cannot provide a basis to affirm the award.
 
 
 55
 Nor are attorney's fees recoverable under the federal securities law claims advanced by Junker. There is no express provision in Section 12(2) of the 1933 Act permitting recovery of attorney's fees. However, Section 11(e) of the 1933 Act, 15 U.S.C. § 77k(e), provides for a discretionary award of attorney's fees to the prevailing plaintiff in any suit brought under the Act, if the court determines that the defense advanced is frivolous, without merit, or brought in bad faith.[19] Absent such a finding, attorneys fees may not be awarded under Section 11(e).[20] Johnson v. Yerger, 612 F.2d 953, 959 (5th Cir. 1980).
 
 
 56
 Even assuming the existence of an implied cause of action under Section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), see note 10, supra, such a cause of action would not necessarily permit an award of attorney's fees. We have held that attorney's fees are not recoverable in an implied cause of action under Rule 10b-5, Huddleston v. Herman & MacLean, 640 F.2d 534, 559-60 (5th Cir. 1981), a provision that tracks the language of Section 17(a). See Hazen, A Look Beyond the Pruning of Rule 10b-5: Implied Remedies and Section 17(a) of the Securities Act of 1933, 64 Va.L.Rev. 641, 646 (1978). Assuming a private cause of action may be implied in Section 17(a) and assuming that the Section 11(e) provision for attorney's fees may be applicable to such an action, see L. Loss, Securities Regulation 1837-38 n.506 (2d ed. 1961), just as in a suit under Section 12(2), a claim under Section 17(a) would not result in the recovery of attorney's fees via Section 11(e) absent a finding by the trial court to the effect that the defense was meritless or advanced in bad faith.
 
 
 57
 The trial court made no finding that the defense advanced was without merit or that defendants acted in bad faith. In any event, the record does not support such a conclusion. Therefore, even assuming that Mrs. Junker might prevail on the merits of any or all of the federal securities law claims asserted against the defendants, she was not entitled to attorney's fees under any of them.[21] Because we perceive no legal basis for the trial court's award of attorney fees to Mrs. Junker, we reverse that part of the judgment.
 
 
 58
 For these reasons the judgment in Mrs. Junker's favor is AFFIRMED in part, as to the principal amount of damages allowed, REVERSED as to the award of attorney's fees, and the case is REMANDED for the determination of the net amount of damages due in proceedings consistent with this opinion. Costs are taxed to the defendants.
 
 
 
 *
 Senior Judge of the United States Court of Claims, sitting by designation
 
 
 [1]
 James Davidson was also a Road director and officer but held no position in Reco. Although he was named as a defendant, the trial court exonerated him of any liability. There is no appeal from the judgment in Davidson's favor
 Frederick Heisler, an attorney and the remaining individual defendant, was not an officer, director or shareholder in either corporation, but acted as counsel for Reco and Road, as well as for Walter Crory. The two corporations, Reco and Road, were also named as defendants.
 
 
 [2]
 (I)f a corporation has, by vote of its shareholders, ... become a party to a merger ..., then, unless such authorization or action shall have been given or approved by at least eighty per cent of the total voting power, a shareholder who voted against such corporate action shall have the right to dissent
 La.Rev.Stat. 12:131(A) (emphasis added).
 The right to dissent entitles the shareholder to recover the fair cash value of his shares upon delivering his shares to the corporation. La.Rev.Stat. 12:131(B).
 
 
 [3]
 Applying the market data approach, Mr. Kuebel, the plaintiff's expert appraiser, determined the land values in 1973 and 1975 by studying sales of comparable properties. The market data approach tends to show land values that would be agreed upon between a typical informed seller and buyer at particular points in time. Then Kuebel applied the cost approach to arrive at the value of the land and buildings by adding the land values obtained using the market data approach to the depreciated sound value of buildings. Thus, the cost or summation approach approximated the replacement value of equally desirable property in 1973 and 1975
 
 
 [4]
 Junker also alleged violations of Section 20 of the 1934 Act, 15 U.S.C. § 78t, which imposes liability on a controlling person coextensive with the liability under the 1934 Act of the person controlled, and Section 15 of the 1933 Act, 15 U.S.C. § 77o, which similarly imposes liability on a controlling person to the same extent as the person controlled is liable under Section 12 of the 1933 Act. However, the trial court did not address these allegations in its decision and we find it unnecessary to reach those claims on appeal
 
 
 [5]
 La.Rev.Stat. 12:91. See Babineaux v. Judiciary Commission, 341 So.2d 396, 400 (La.1976) (dictum); Noe v. Roussel, 310 So.2d 806, 817 (La.1975) (dictum). See generally Miller, The 1968 Business Corporation Law of Louisiana, 29 La.L.Rev. 435, 468-79 (1969); Comment, Duty of Corporate Officers and Directors in Louisiana, 29 La.L.Rev. 691 (1969)
 
 
 [6]
 The defendants also contend on appeal that the district court improperly exercised pendent jurisdiction over the state law claims because the federal claims wholly lacked merit. Although the federal court's power to exercise pendent jurisdiction depends upon the existence of a substantial federal question, see, e. g., Kuhn v. National Ass'n of Letter Carriers, 570 F.2d 757 (8th Cir. 1978); Kimbrough v. Arkansas Activities Ass'n, 574 F.2d 423 (8th Cir. 1978); see also 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3567 (1975), it is evident that the federal claims were not so wholly lacking in merit as to bar the exercise of pendent jurisdiction in this case
 
 
 [7]
 Interpace Corp. v. Board of Commissioners of the Port of New Orleans, 489 F.Supp. 140, 145 (E.D. La.1980); Twillie v. H. B. Zachry Co., 380 So.2d 747, 750 (La.App.1980); Bossier City v. Usery, 356 So.2d 1099, 1101 (La.App.1978)
 
 
 [8]
 Interpace Corp. v. Board of Commissioners of the Port of New Orleans, 489 F.Supp. at 146; Duthu v. Allements' Robertson Machine Works, Inc., 393 So.2d 184, 186 (La.App.1980); Twillie v. H. B. Zachry Co., 380 So.2d at 750; Bamber Contractors, Inc. v. Morrison Engineering & Contracting Co., 385 So.2d 327, 331 (La.App.1980); Department of Culture, Recreation and Tourism v. Fort Macomb Development Corp., 385 So.2d 1233, 1236-37 (La.App.1980)
 
 
 [9]
 Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975); Twillie v. H. B. Zachry Co., 380 So.2d at 750; Department of Culture, Recreation & Tourism v. Fort Macomb Development Corp., 385 So.2d at 1236-37
 
 
 [10]
 The federal securities law claims on which the district court granted relief present complex and troublesome issues, some of which received inadequate treatment by the parties. As is evident from our discussion of the liability of attorney Heisler under Section 12(2) of the 1933 Act, infra, the question whether the Reco officers and directors, who patently were not conventional sellers of securities, are sellers for purposes of Section 12(2) liability requires more analysis than that afforded the issue in the parties' briefs
 Moreover, perhaps because of a similar failure by the parties adequately to raise the issue, in awarding Junker relief under Section 17(a) of the 1933 Act, the district court did not consider whether that section, which does not expressly provide a private cause of action for damages, may be held to imply such a remedy. The implication of a private cause of action in Section 17(a) is an issue not yet resolved by the Supreme Court, see International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808, 815 n. 9 (1979); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539, 548 n. 6 (1975), or by this court. Although other circuits have addressed the issue, they have reached conflicting conclusions. Compare Lincoln National Bank v. Herber, 604 F.2d 1038, 1040 n. 2 (7th Cir. 1979) (finding a cause of action under § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a)); Kirshner v. United States, 603 F.2d 234, 241 (2d Cir. 1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 and cert. denied sub nom., 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979) (same); and Newman v. Prior, 518 F.2d 97, 99 (4th Cir. 1975) (same) with Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 159 (8th Cir. 1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (rejecting implied action under § 17(a)). See generally R. Jennings & H. Marsh, Securities Regulation 863-64 (4th ed. 1977); Hazen, A Look Beyond the Pruning of Rule 10b-5: Implied Remedies and Section 17(a) of the Securities Act of 1933, 64 Va.L.Rev. 641 (1978).
 Finally, to make out a claim under Section 10(b) of the 1934 Act and Rule 10b-5, the plaintiff must establish that he reasonably relied on the defendant's material misrepresentations or omissions. Huddleston v. Herman & MacLean, 640 F.2d 534, 547-50 (5th Cir. 1981). Junker's Rule 10b-5 claims present difficult questions regarding whether a minority shareholder who votes against a merger can be said to have relied on the representations of the defendant officers and directors in "purchasing" the shares of stock that he received in the merger. This factor has not been adequately addressed.
 Because the pendent state law claims provide a firm basis for upholding the judgment against the Reco officers and directors, we merely note the most obvious problems presented by the theories of liability under the federal securities laws relied on by the plaintiff, but do not undertake analysis of the federal claims.
 
 
 [11]
 Junker's complaint does not allege a violation by Heisler of any state law duty to Reco. See Grand Isle Campsites, Inc. v. Cheek, 262 So.2d 350, 359 (La.1972) (Barham, J., dissenting in part); Cattle Farms, Inc. v. Abercrombie, 211 So.2d 354, 365 (La.App.1968). Although the complaint did allege that Heisler's actions constituted fraud under La.Civ.Code art. 1847, the district court did not address this claim. Therefore, we bypass any state law claims against Heisler and analyze his liability under the federal securities laws
 
 
 [12]
 Although the complaint did not specifically allege Heisler's liability under Section 12(2) of the 1933 Act, the pre-trial order, which was signed by the attorney representing all of the defendants, named Heisler as a defendant and listed as a legal issue for determination at trial the question whether "the defendants by their actions violated Section 12(2) of the Securities Act of 1933." The trial court held all of the defendants, except Davidson, liable for violations of Section 12(2)
 
 
 [13]
 Section 12(2) of the 1933 Act provides in pertinent part:
 Any person who
 offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
 shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
 Section 12(2) of the 1933 Act, 15 U.S.C. § 77l (2).
 
 
 [14]
 See Wertheim & Co. v. Codding Embryological Sciences, Inc., 620 F.2d 764, 767 (10th Cir. 1980); Sanders v. John Nuveen & Co., Inc., 619 F.2d 1222, 1225 (7th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981). See generally Kaminsky, An Analysis of Securities Litigation Under Section 12(2) and How It Compares with Rule 10b-5, 13 Hous.L.Rev. 231 (1976); Peterson, Recent Developments in Civil Liability Under Section 12(2) of the Securities Act of 1933, 5 Hous.L.Rev. 274 (1967)
 
 
 [15]
 Cf. SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (shareholders of acquired corporation purchased shares in acquiring corporation for Rule 10b-5 purposes by exchanging their shares in acquired corporation for shares in the acquiring corporation pursuant to merger); Smallwood v. Pearl Brewing Co., 489 F.2d 579, 591 (5th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974) (for Rule 10b-5 purposes, merged corporation's shareholders sold their shares in that corporation and purchased shares in acquiring corporation)
 
 
 [16]
 On appeal the defendants contend that Junker is estopped to assert claims under the federal securities law because he failed to pursue certain remedies available under state law, such as the appointment of a receiver for Reco pursuant to La.Rev.Stat. 12:151(A). However, a purchaser of a security is not required to pursue state remedies before bringing a federal securities law claim in federal court
 
 
 [17]
 Bailey v. Meister Brau, Inc., 535 F.2d 982, 995 (7th Cir. 1976). See Jones v. Uris Sales Corp., 373 F.2d 644, 648 (2d Cir. 1967). See also Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849, 859 (1975)
 
 
 [18]
 Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238, 1241 (5th Cir. 1980); Ogea v. Loffland Brothers Co., 622 F.2d 186, 190 (5th Cir. 1980); Nassau Realty Co. v. Brown, 332 So.2d 206, 210 (La.1976); Rutherford v. Impson, 366 So.2d 944, 947 (La.App.1978). See generally Comment, Attorney's Fees as an Element of Damages: The General Rule and Its Exceptions, 20 La.L.Rev. 389 (1960); Comment, Attorney's Fees as an Element of Damages in Louisiana, 34 Tul.L.Rev. 146 (1959)
 
 
 [19]
 Section 11(e) of the 1933 Act provides in pertinent part:
 In any suit under this or any other section of this title (15 U.S.C. § 77a et seq.) the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing costs in the court in which the suit was heard.
 Section 11(e) of the 1933 Act, 15 U.S.C. § 77k(e) (emphasis added).
 
 
 [20]
 See Oil & Gas Income, Inc. v. Woods Exploration and Production Co., Inc., 362 F.2d 309 (5th Cir. 1966), 395 F.2d 753 (5th Cir. 1968). See also Shaw v. Merritt-Chapman & Scott Corp., 554 F.2d 786 (6th Cir.), cert. denied, 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977); Jackson v. Oppenheim, 533 F.2d 826 (2d Cir. 1976); Aid Auto Stores, Inc. v. Cannon, 525 F.2d 468 (2d Cir. 1975); Klein v. Shields & Co., 470 F.2d 1344 (2d Cir. 1972); Can-Am Petroleum Co. v. Beck, 331 F.2d 371 (10th Cir. 1964); Stadia Oil & Uranium Co. v. Wheelis, 251 F.2d 269 (10th Cir. 1957). See generally L. Loss, Securities Regulation 1836 et seq. (2d ed. 1961); 23 A.L.R.Fed. 983 (1975)
 
 
 [21]
 The claims asserted under Section 20 of the 1934 Act, 15 U.S.C. 78t, and Section 15 of the 1933 Act, 15 U.S.C. § 77o, see note 4 supra, do not provide a basis for the attorney's fees award because the liability each imposes on the controlling person is coextensive with the liability of the controlled person under other sections of the 1933 and 1934 Acts